## Scott et al. v. Holmes et al., County Commissioners.

*Thomas Raeburn White*, for plaintiffs; *William T. Connor*, for defendants.

ALESSANDRONI, J., June 28, 1929.—At the general election in 1928 the voters of Pennsylvania approved an amendment to section 7 of article VIII of the Constitution of Pennsylvania, which in effect provides that the general assembly shall, by general law, permit the use of voting-machines or other mechanical devices for registering or recording and computing the vote at all elections or primaries in any city, county, borough or township of the Commonwealth, etc.

Pursuant to this constitutional mandate, the legislature passed the Act of April 18, 1929, No. 244, entitled "An act to permit the use of voting-machines for recording and computing the vote at all elections, including primaries, in any county, etc."

Under its provisions, the county commissioners are required to submit the question "Shall voting-machines be used in the (county, city, borough or township) of . . . ?" to the voters at an election.

A question having arisen as to whether the question should not be submitted at the primary instead of at a general or municipal election, the parties have agreed to the following case stated:

It is agreed by and between T. R. White, attorney for plaintiffs, and William T. Connor, attorney for defendants, that a case be stated for the decision of the court as if a petition for a writ of altenative mandamus had been filed to the above term and number, a writ of alternative mandamus issued thereon, and a return filed thereto by the defendants, from which petition, return and writ the following facts appeared:

1. The plaintiffs and sundry other persons, all of whom are qualified electors of the County of Philadelphia, equaling in number more than 1 per cent. of the total number of electors who voted in said county at the general election held on Nov. 6, 1928, did, on June 27, 1929, file with the defendants, who are the County Commissioners of the County of Philadelphia, their petition requesting the defendants to submit to the qualified electors of the said county at the time and in the manner provided by the Act of the General Assembly approved April 18, 1929, No. 244, the question, "Shall voting-machines be used in the County of Philadelphia?"

2. The plaintiffs are advised and believe that the said act of the general assembly requires the defendants to submit the said question to the qualified electors of the County of Philadelphia at the primary election to be held on Sept. 17, 1929, that being the next general, municipal or primary election occurring at least sixty days after the filing of the said petition.

3. The defendants are advised and believe that the said act of the general assembly does not authorize or permit them to submit the said question at a

primary election, and that, under the terms of the said act and pursuant to said petition, the said question should be submitted to the qualified electors of the County of Philadelphia at the municipal election to be held on Nov. 5, 1929. The defendants have, therefore, expressed their intention not to submit the said question at the primary election to be held on Sept. 17, 1929.

4. Section 2 of the Act of April 18, 1929, herein referred to, when introduced into the Senate of the Commonwealth of Pennsylvania, read as follows: "Section 2. Authorization of Voting Machines. Any county, city, borough or township may, by a majority vote of its qualified electors cast at any *general, municipal, primary* or *special* election, authorize and direct the use of voting-machines for registering or recording and computing the vote at all elections held in such county,• city, borough or township, or in any part thereof."

In the course of the passage of the said act through the House of Representatives, the said section 2 was amended so as to read as follows: "Section 2. Authorization of Voting Machines. Any county, city, borough or township may, by a majority vote of its qualified electors voting thereon cast at any *general* or *municipal* election, authorize and direct the use of voting-machines for registering or recording and computing the vote at all elections held in such county, city, borough or township, or in any part thereof."

As finally passed and approved by the Governor of the Commonwealth, section 2 of said act read as last above quoted.

5. If the court shall be of opinion that the provisions of the Act of April 18, 1929, No. 244, require the defendants to submit the said question to the qualified electors of the County of Philadelphia at the primary election on Sept. 17, 1929, judgment shall be entered in favor of the plaintiffs and against the defendants; otherwise, judgment shall be entered in favor of the defendants, reserving the right to the parties against whom judgment is entered to take an appeal therefrom to the Supreme Court of Pennsylvania.

The issue before us is whether the County Commissioners are required to submit the question of the adoption of the use of voting-machines to the electors at the next primary election.

We are called upon, therefore, to interpret and construe the several provisions of the act affecting the question.

The last paragraph of section 1 reads: "The words 'election' and 'elections,' whenever used in this act, shall be held to include and mean all general, municipal, primary and special elections."

Section 2 provides: "Authorization of Voting Machines. Any county, city, borough or township may, by a majority vote of its qualified electors voting thereon cast at any general or municipal election, authorize and direct the use of voting-machines for registering or recording and computing the vote at all elections held in such county, city, borough or township, or in any part thereof."

The language of section 3 is: "Placing the Question on the Ballot; Election thereon.

"*(a)* The county commissioners may, upon their own motion, submit to the qualified electors of the county, or of any city, borough or township thereof, at any election, the question 'Shall voting-machines be used in the (county, city, borough or township) of . . . ?'

"*(b)* The county commissioners, upon receipt of a request from the council of any city or borough, or from the commissioners or supervisors of any township, said request being evidenced by the filing of a copy of a resolution

certified by the secretary or clerk of the council, commissioners or supervisors, or upon the filing of a petition with them, signed by qualified electors of the county, city, borough or township, equal in number to at least 1 per cent. of the total number of electors who voted in said county, city, borough or township at the preceding general or municipal election, but in no case less than fifty, unless the total number of electors who voted therein at the preceding general or municipal election was less than one hundred, in which case one-half of the number so voting shall be sufficient, shall, at the next general, municipal or primary election, occurring at least sixty days thereafter, submit to the qualified electors of such county, city, borough or township the question 'Shall voting-machines be used in the (county, city, borough or township) of . . . ?'

"(c) The county commissioners shall cause the said question to be printed upon the ballots to be used at the election, in the form and manner provided by the laws governing general and municipal elections.

"(d) The election on said question shall be held at the places, during the hours and under the regulations provided by law for holding general and municipal elections, and shall be conducted by the election officers provided by law to conduct such election. The election officers shall count the votes cast at the elections on said questions, and shall make return thereof to the prothonotary of the county, as required by law. Said returns shall be computed by the Court of Common Pleas, or other return board, and, when so computed, a certificate of the total number of electors voting 'Yes' and of the total number of electors voting 'No' on such question shall be filed in the office of the prothonotary, and a copy thereof, certified by the prothonotary, shall forthwith be furnished to the county commissioners."

The language of these sections is far from an unequivocal designation of the particular election at which this question is to be submitted to the electors. Plaintiffs argue that paragraph (b) of section 3 is sufficiently clear to require the County Commissioners to submit the question "at the next primary election," and that the references to general and municipal elections in section 2, paragraphs (c) and (d) of section 3, are permissive and formal and not directory or mandatory.

The defendants contend there is a conflict between clauses (a) and (b) of section 3, on the one hand, and section 2 and clauses (c) and (d) of section 3, on the other hand.

We find the provisions of these sections inconsistent and contradictory, and in determining the intent of the legislature we are governed by the general principle making it the duty of the judiciary to apply the ordinary rules of construction and, when possible, to reconcile the various legislative provisions so that they may stand together as one harmonious whole. In cases where there is an apparent conflict between parts of the statute, the general purpose of the legislature must be considered, and if the language will permit, such construction must be applied as will give effect to every part of the law.

It is to be observed that section 2 specifically designates any general or municipal election.

Clause (c) of section 3 provides that the county commissioners shall cause the said question to be printed upon the ballots to be used at the election in the form and manner provided by the laws governing general and municipal elections. Clause (d) directs that the election on said question shall be held at the places, during the hours, etc., provided by law for holding general and municipal elections, and shall be conducted by the election officers provided by law to conduct such election.

Of considerable significance is the sentence immediately following, namely: "The election officers shall count the votes cast at the elections on said question, and shall make return thereof to the prothonotary of the county, as required by law. Said return shall be computed by the Court of Common Pleas or other return board," etc.

It is pointed out that the returns of the primary elections are made directly to the county commissioners, whereas the returns of the general election are made to the prothonotary of the county and the vote computed by the Court of Common Pleas. If the construction advanced by the plaintiffs were to prevail, we take it to mean that the legislature intended that this question should be submitted at the primary and the vote to be received at the places, during the hours and under the regulations provided for as in the manner of general and municipal elections. It means, also, that the returns having to do with the question of the voting-machines should be made to the prothonotary and the other returns to the county commissioners.

Was it the intention of the legislature that the will of the people respecting the voting-machine should be ascertained at the primary under the rules and regulations governing the general election? We are not inclined to think so. We believe, rather, that it intended the question to be submitted at that election that offered the greatest opportunity for expression of the popular will. We are re-enforced in that opinion by the express language of section 2, which prescribes the manner in which the electors may authorize and direct the use of the machine. This section admits of but one construction: "Any county, city, etc., may, by majority vote of its qualified electors voting thereon cast at any general or municipal election, authorize and direct the use of voting-machines."

The use of the word "may" is in reference to the electors' choice of authorizing the use of the voting-machines and not in a permissive sense with regard to any election.

That the legislature intended a general or municipal election is evidenced further by reading clause (g), section 4, which provides for a recall of the voting-machine: "Any county, city, borough or township may, by a majority vote of its qualified electors cast at any general election held not earlier than one hundred and three weeks after they have voted to adopt such machines, direct the discontinuance of the use of voting-machines at elections held in such county, city, borough or township."

This section, it is true, also provides that the discontinuance of the use of the voting-machine shall be submitted to the voters in the same manner, subject to the same requirements as to petition and signatures thereon, as is required for the submission of the question on the authorization of the use of such voting-machines. The obvious reference here is to the provision in section 2, entitled "Authorization of Voting Machines."

Is it probable that the legislature intended the adoption of the voting-machine at the primary and the recall or discontinuance of it at the general election?

Having designated the general election for its discontinuance, the provisions of the 2nd paragraph of clause (g), section 4, do not, in our opinion, set up another than the general election, but prescribes that the method to be pursued in the recall shall be similar in all other respects to the procedure authorizing the use of the machine.

We are, therefore, of the opinion that a reading of all the provisions touching the question at issue [shows that they] are not so contradictory or irreconcilable as to leave the intent of the legislature in doubt. In this question of

State-wide importance, in ascertaining the intent of the legislature, we cannot overlook the limitations of primary elections. No ballots are used other than party ballots. No one is permitted to vote not enrolled under the party enrollment or who desires not to disclose his party affiliation. Special questions have been submitted to voters at the primary, but in such instances the submission has been in the nature of a special election and upon a separate ballot. Under the practice in vogue, this question could not be printed upon the primary ballot, but would have to be presented as in the case of a special election. Nowhere in the act do we find authority for the employment of this method. The reason and spirit underlying the legislative enactment, as well as its effects and consequences, will be looked into in determining the legislative intent. If there is room for construction, the court will prefer that construction which is most consonant with the purpose for which the act was passed.

And now, to wit, June 28, 1929, judgment in the case stated is entered in favor of the defendants in accordance with the foregoing opinion.